UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL PULLIAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 913 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| CITY OF CALUMET CITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Michael Pulliam ("Plaintiff") brings this pro se action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against the City of Calumet City ("Defendant" or "City") based on Defendant's seizure and demolition of his properties situated in Calumet City, Illinois. (R. 16, Am. Compl. at 1, 5-6.) Plaintiff also brings supplemental claims under Illinois law for "Replevin and/or Conversion" and intentional interference with business relationships and prospective advantages. (*Id.* at 6-7.) Defendant moves to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion is granted.

## BACKGROUND[1]

Plaintiff is a citizen of the State of Illinois and Defendant is an incorporated municipality located in Illinois. (R. 17, Am. Compl. ¶¶ 3-4.) On or about May 28, 1999, Plaintiff purchased three neighboring lots of property in Calumet City—Lots 14, 15, and 16—which consisted of residential buildings, storage space, a shed, a garage, private sidewalks, and land. (*Id.* ¶ 6.) Lots 14 and 15 included a one-and-a-half story, two-apartment building with a common street address

---

[1] These allegations are recounted as averred in Plaintiff's First Amended Complaint, (R. 17). Because Plaintiff is proceeding pro se, the Court construes the complaint liberally. *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

of 545 Forsythe Avenue. (*Id.* ¶ 7.) Lot 16 included a two story, three-apartment building with a common street address of 543 Forsythe Avenue. (*Id.* ¶ 8.) Plaintiff alleges that he purchased the properties in compliance with all city codes and ordinances and that Defendant required a point-of-sale inspection of the properties prior to purchase. (*Id.* ¶¶ 13-14.) In 1999, shortly following the purchase, Plaintiff registered his business mailing address and phone number in Chicago with Defendant for purposes of contacting him or serving notices in relation to his Calumet City properties. (*Id.* ¶ 12.)

Plaintiff occupied the property from 1999 to 2002, after which he rented all rentable space but would occupy vacant units from time to time. (*Id.* ¶ 15.) Plaintiff used a lawn service to maintain the lawns during the spring and summer and shoveled snow himself in the winter. (*Id.* ¶¶ 22-23.) The complaint alleges that beginning in about 2007, a Calumet City "building department" employee named Gene informed Plaintiff at least five times that his properties were "grandfathered as legal non-conforming structures" and that Plaintiff would not be allowed to rebuild them if they were destroyed. (*Id.* ¶ 16.) The employee made these statements when Plaintiff visited the building department to schedule annual inspections of his properties. (*Id.*) However, at the time of the point-of-sale inspection in 1999, Defendant did not provide Plaintiff any documentation concerning rebuilding restrictions or his properties' putative non-conforming status. (*Id.* ¶ 18.)

From 1999 to 2012, Plaintiff estimates that his properties were occupied 90% of the time. (*Id.* ¶ 25.) However, in mid-2012, Plaintiff became ill and underwent surgery. (*Id.* ¶ 20.) Following surgery, from about August 2012 until February 2014, Plaintiff stayed with caretakers in Chicago, Illinois. (*Id.*) Due to his illness, the properties in Calumet City became unoccupied. (*Id.* ¶ 25.) Plaintiff alleges that Defendant was aware at this time that he was incapacitated due to

illness. (*Id.* ¶ 21.) When the properties were unoccupied, Plaintiff kept the apartments, shed, and garage locked and shut off all utilities. (*Id.* ¶¶ 24, 26.)

Plaintiff alleges that Defendant maintains a policy of demolishing open and vacant properties that it considers continuing and immediate hazards to the surrounding community. (*Id.* ¶ 27.) On August 2, 2013, Defendant identified Plaintiff's properties as open and vacant and a continuing hazard, and recorded a notice to remediate with the county Recorder of Deeds. (*Id.* ¶ 28.) The next month, Defendant filed a lien for $90 against Plaintiff's properties for remedial work that it allegedly performed on the properties. (*Id.* ¶ 29.) Plaintiff alleges that the conditions which necessitated the remedial work performed by Defendant did not constitute an immediate hazard to the community. (*Id.* ¶ 30.) Plaintiff alleges that, contrary to Defendant's notice of lien, there was no garbage, debris, excessive lawn or vegetation, or other nuisance in need of abatement at his properties, nor were his properties open and vacant and an immediate hazard to the community. (*Id.* ¶¶ 30-33.) In February 2014, approximately six months later, Defendant allegedly "seized, stripped and razed all of the buildings on the Lots without proper notice to the Plaintiff or the lender." (*Id.* ¶ 36.) On or about March 15, 2014, Plaintiff drove to his properties and "shockingly found each structure missing." (*Id.* ¶ 37.) He reported what he found to a Calumet City police officer, who directed him to the City's building department. (*Id.*)

Plaintiff alleges that from March 2014 through late 2016, he tried to obtain information from the City on more than ten occasions by visiting, emailing, calling, and submitting Freedom of Information Act (FOIA) requests to the building department and other City officials. (*Id.* ¶ 38.) Plaintiff alleges that Defendant misled him and concealed or refused to provide the information he was seeking. (*Id.*) On two separate occasions in 2016, City employees did verbally inform Plaintiff that the City had demolished his properties. (*Id.* ¶¶ 42, 45.) However,

3

the employees allegedly did not provide Plaintiff copies of any notices or documents related to the demolition. (*Id.*) Plaintiff alleges that he also met with, emailed, and phoned the City's Building Director, Sheryl Tillman. (*Id.* ¶ 46.) Plaintiff requested documents from her on at least five occasions in 2016 but never received the requested documents. (*Id.*)

The demolition of Plaintiff's properties allegedly devalued the land to $500 and prevented Plaintiff from modifying the loan attached to his properties. (*Id.* ¶¶ 39-40.) In addition, Defendant imposed a demolition lien on the properties in 2015, which allegedly prevented Plaintiff from reclaiming the now-vacant lots. (*Id.* ¶ 41.) Plaintiff also alleges that Defendant requires him to continue to pay annual fees for housing licenses even though his properties were destroyed. (*Id.* ¶ 49.)

Plaintiff filed his initial pro se complaint on February 3, 2017. (R. 1, Compl.) On April 14, 2017, Defendant moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim. (R. 12, Mot.) On April 21, 2017, this Court granted Plaintiff leave to either file an amended complaint or respond to Defendant's motion to dismiss. (R. 16, Min. Entry.) Plaintiff filed an amended complaint on May 30, 2017. (R. 17, Am. Compl.) In Count I of the amended complaint, Plaintiff asserts a due process claim under 42 U.S.C. § 1983 based on Defendant's failure to follow the procedures set forth in 65 ILL. COMP. STAT. 5/11-31-1 and City ordinance Section 14-42 before seizing and demolishing his properties. (*Id.* at 5.) In particular, Plaintiff alleges that Defendant failed to: post a 2-foot by 2-foot notice at his properties prior to demolition, as allegedly required by 65 ILL. COMP. STAT. 5/11-31-1(e); mail a certified notice to him, as also allegedly required by the statute; publish the required notice in a newspaper; "demolish Plaintiff's properties according to the statu[t]e"; and "impose the lien according to the statu[t]e." (*Id.* ¶¶ 54-58.)

4

In Count II, Plaintiff asserts a claim for "replevin and/or conversion" under Illinois law. (*Id.* at 6.) Plaintiff alleges that "[n]o Circuit Court records exist of an action . . . by the City . . . for an administrative search warrant to seize Plaintiff's properties." (*Id.* ¶ 60.) Plaintiff further alleges that Defendant "converted the appliances, boilers, copper pipes, furnaces, fixtures and radiators," "imposed changes to the condition of the items and limited access to the items," "wrongfully assumed control, dominion and/or ownership over the properties," and "destroyed personal and business records, drawings, receipts and photographs." (*Id.* ¶¶ 61-62, 64, 66.)

In Count III, Plaintiff asserts a claim under Illinois law for intentional interference with business relationships and prospective advantages. (*Id.* at 1, 7.) Specifically, Plaintiff alleges that Defendant's seizure and demolition of his properties, and its "subsequent actions of concealment, economic coercion, intimidation and false statements," disrupted his business relationships with third parties, including lenders, the federal government, and insurers. (*Id.* ¶¶ 68-80.)

Defendant moves again to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). (R. 18, Mot.) First, Defendant argues that Plaintiff's Section 1983 claim is barred by a two-year statute of limitations. (*Id.* at 2-3.) Second, Defendant argues in the alternative that Plaintiff's Section 1983 claim is not viable because it seeks to impose *respondeat superior* liability on the City, which is impermissible under applicable law. (*Id.* at 4.) Third, Defendant argues that Plaintiff's state law claims are barred by a one-year statute of limitations. (*Id.* at 3.) Last, Defendant argues in the alternative that Plaintiff has failed to state a viable claim for replevin because real property is not subject to replevin. (*Id.* at 5.)

## LEGAL STANDARDS

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A motion to dismiss pursuant to Rule

5

12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citation and internal alteration omitted). To survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). In addition, the Court construes pro se complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017); *see also Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) ("Because [plaintiff] was proceeding pro se, the district court was required to liberally construe his complaint.").

A statute of limitations defense "is not often resolved on a Rule 12(b)(6) motion because a complaint need not anticipate and overcome affirmative defenses." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (citation and internal quotation marks omitted). Nevertheless "dismissal under Rule 12(b)(6) . . . is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the

complaint is subject to dismissal for failure to state a claim[.]"). At the pleadings stage, the relevant question is whether "there is a conceivable set of facts, consistent with the complaint, that would defeat [the] statute-of-limitations defense." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). If so, the question of timeliness is better left for summary judgment (or trial), "at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Id.*

## ANALYSIS

### I. Statute of Limitations

Defendant contends that both Plaintiff's Section 1983 claim and his state law claims are barred by the applicable statutes of limitations. The Court addresses the timeliness of the federal and state claims separately.

#### A. Plaintiff's Section 1983 Claim

Because Section 1983 does not supply its own statute of limitations, the timeliness of Section 1983 claims is determined by "the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). In Illinois, where Plaintiff's buildings were located before being demolished and where his injury therefore occurred, that statute of limitations is two years. 735 ILL. COMP. STAT. 5/13-202. Thus, Plaintiff had two years from the time his cause of action accrued to bring a Section 1983 claim. *See Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017).

Defendant contends that Plaintiff's Section 1983 claim is untimely because it accrued on March 15, 2014, when Plaintiff drove to his properties and found his buildings demolished, but he did not file suit until February 3, 2017, nearly three years later. (R. 18, Mot. at 1.) Plaintiff responds with several arguments. First, Plaintiff contends that his claim did not accrue until

7

sometime in 2016, "when City employees admitted the City demolished his properties."[2] (R. 21, Resp. at 5.) Until that time, Plaintiff contends, he did not know or have reason to know it was the City—as opposed to "any number of bad actors, including creditors, former partners, former tenants, former 'significant others', or other possible adversaries"—that demolished his buildings. (*Id.* at 2.) According to Plaintiff, the allegations in the amended complaint do not establish that he knew or should have known of the City's involvement any earlier than 2016. (*Id.* at 1 ("Plaintiff's [Amended Complaint] states that Defendant's identity became known during 2016[.]").) Plaintiff reasons that since he did not know who caused his injury until 2016, he could not have filed suit—and therefore a cause of action did not accrue—until then. (*Id.* at 2-6.)

While state law determines the length of the limitations period for Section 1983 claims, federal law determines when a cause of action accrues. *Brown*, 876 F.3d at 940. In general, a claim accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Amin Ijbara Equity Corp.*, 860 F.3d at 493 (citation omitted). The inquiry proceeds in two steps: the Court must "first identify the plaintiff's injury," then determine "when the plaintiff could have sued for that injury." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Ordinarily, a Section 1983 claim accrues when a plaintiff "knows or should know that his or her constitutional rights have been violated." *Id.* at 581-82; *see also Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (explaining that accrual "should coincide with the date the plaintiff 'knows or should have known' that his rights were violated" (citation omitted)).

---

[2] Plaintiff does not allege precisely when this happened, nor is he any more specific about when he allegedly first ascertained the City's involvement. He instead asserts only that "Defendant's identity became known during 2016[.]" (R. 21, Resp. at 1.)

8

Plaintiff's Section 1983 claim generally asserts that the City deprived him of property without due process of law, in violation of the Fourteenth Amendment, by failing to follow the procedures in 65 ILL. COMP. STAT. 5/11-31-1(e) and City ordinance Section 14-42 before demolishing his properties. (R. 17, Am. Compl. ¶¶ 51-58; *see also* R. 21, Resp. at 1 ("The City misused its authority under the color of state law by demolishing Plaintiff's . . . buildings in violation of his due process rights which is . . . Plaintiff's stated federal cause of action.").) "A claim brought under the Fourteenth Amendment for deprivation of property without due process accrues when the injury is 'complete,' which is when the actual deprivation occurs." *Scott v. Chicago Police Dep't*, No. 14 C 6657, 2015 WL 394360, at *3 (N.D. Ill. Jan. 29, 2015), *aff'd sub nom. Scott v. City of Chicago*, 619 F. App'x 548 (7th Cir. 2015). The alleged deprivation to Plaintiff occurred, and his injury was complete, in February 2014 when the City demolished his buildings. But Plaintiff alleges that he did not discover that his properties had been demolished until March 15, 2014. (R. 17, Am. Compl. ¶ 37.) Consequently, the federal "discovery rule" postponed accrual of his claim until that date. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule' of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law)[.]"); *Johnson v. Garza*, 564 F. Supp. 2d 845, 850-51 (N.D. Ill. 2008) (quoting *Cada* and applying discovery rule in Section 1983 case). However, the "discovery" that the discovery rule speaks of, and until which accrual is postponed, "is merely discovery that the plaintiff has been wrongfully injured." *Fid. Nat. Title Ins. Co. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006); *see also Cada*, 920 F.2d at 451 (explaining that the discovery rule differs from equitable tolling

9

in that with tolling, "the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to . . . wrongdoing by the defendant"). A plaintiff "doesn't have to know who injured him" in order for a claim to accrue. *Fid. Nat. Title*, 436 F.3d at 839. "He has the limitations period to discover that, draft his complaint, and file suit."[3] *Id.* Accrual of Plaintiff's cause of action did not depend on him having knowledge of who demolished his buildings. *See id.* His claim therefore accrued on March 15, 2014, when he admittedly discovered his buildings were demolished. Plaintiff easily could have filed suit anytime during the two years that followed this discovery.

Plaintiff's second, alternative argument is that the statute of limitations should be equitably tolled for the same reason—namely that until 2016, when City employees admitted that the City demolished his buildings, he did not know or have reason to know who was responsible. (R. 21, Resp. at 1, 13.)

---

[3] The Court recognizes that decisions by the U.S. Court of Appeals for the Seventh Circuit on this issue have not been entirely consistent. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 930 (7th Cir. 2015) (noting that "our decisions . . . are somewhat inconsistent" on the issue of whether the discovery rule postpones claim accrual until a plaintiff knows who caused his injury); *Raymond v. CoVantage Credit Union*, No. 17-CV-109-BBC, 2017 WL 3017046, at *5 (W.D. Wis. July 14, 2017) ("As noted in *Sidney Hillman* . . . in some cases, the discovery rule has been described as delaying accrual until the 'plaintiff discovers that he has been injured and who caused the injury,' but in other cases accrual occurs once the plaintiff discovers his injury[,] and knowledge of the cause is not required."); *compare Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (describing "general rule that accrual occurs when the plaintiff discovers that he has been *injured* and who *caused* the injury" (citation and internal quotation marks omitted)), *with Fid. Nat. Title Ins. Co. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006) ("[W]hen a statute of limitations does not begin to run until 'discovery,' the discovery referred to is merely discovery that the plaintiff has been wrongfully injured."). However, the Seventh Circuit has "never overruled [its] decisions . . . adopting [the] simple 'injury discovery' rule" that the Court applies here, and has emphasized that "a plaintiff doesn't have to know who injured him to file suit" because other doctrines such as tolling are available when a plaintiff is unable to identify who caused his injury. *Sidney Hillman Health Ctr.*, 782 F.3d at 930 (citation and internal quotation marks omitted). In addition, given that equitable doctrines such as tolling—which Plaintiff invokes here—are available to address unavoidable delay in filing suit, the Seventh Circuit's earlier, "simple injury discovery" formulations of the discovery rule, *see id.*, avoid confusing the scope and application of the discovery rule with such equitable doctrines.

Because the statute of limitations for Section 1983 claims is borrowed from state law, the corresponding state rather than federal equitable tolling rules apply. *Moore v. Burge*, 771 F.3d 444, 447 (7th Cir. 2014); *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001). Under Illinois law, "[a] limitations period may be equitably tolled where extraordinary barriers prevent the plaintiff from asserting [his] rights in a timely fashion, such as legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Guarantee Tr. Life Ins. Co. v. Kribbs*, 68 N.E.3d 1046, 1059 (Ill. App. Ct. 2016) (citation and internal quotation marks omitted). "If despite the exercise of reasonable diligence [the plaintiff] cannot discover his injurer's . . . identity within the statutory period, he can appeal to the doctrine of equitable tolling to postpone the deadline for suing until he can obtain the necessary information." *Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014) (citation omitted); *see also Shropshear*, 275 F.3d at 595 ("Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim."). Because equitable tolling does not reset the statute of limitations, however, "Illinois law also requires that the plaintiff act diligently to file his suit." *Rosado v. Gonzalez*, 832 F.3d 714, 717 (7th Cir. 2016). That is, the plaintiff must "get the litigation under way promptly after the circumstance justifying delay is no longer present." *Id.* (citation omitted).

Based on the facts alleged in the complaint, it is conceivable—although relatively implausible—that for a period of time after discovering his buildings demolished, Plaintiff did not know or have reason to know who was responsible. Once Plaintiff discovered his buildings he knew that it was highly likely that only Defendant could have accomplished this result. In

fact, his amended complaint details repeated visits to offices maintained by Defendant. Plaintiff made no inquiries about this demolition other than to remain focused on Defendant.

It is conceivable, for example, that the police officer Plaintiff encountered the day that he discovered the demolition "directed him to the City's building department," in Plaintiff's words, (R. 17, Am. Compl. ¶ 37), without saying anything to suggest that the City was *responsible* for the demolition. It is likewise conceivable that in Plaintiff's persistent and prolonged efforts to obtain "information" from the City—his numerous visits, emails, phone calls, and FOIA requests—he was attempting to determine *who* demolished his buildings, rather than obtain some other information presupposing that the City was responsible.[4] Plaintiff has not alleged anything that specifically supports this possibility, but what matters for present purposes is that nothing in the amended complaint rules them out. *See Sidney Hillman Health Ctr.*, 782 F.3d at 928.

However, it is not conceivable that Plaintiff could, with the exercise of due diligence, continue to be unaware of who caused his injury once the City imposed a demolition lien on his property, which Plaintiff affirmatively alleges occurred in 2015. (R. 17, Am. Compl. ¶ 41.) A demolition lien is essentially a lien on real property for the costs of a demolition. *See* 65 ILL. COMP. STAT. 5/11-31-1(a) ("The cost of the demolition . . . incurred by the municipality . . . is recoverable from the owner or owners of the real estate . . . and is a lien on the real estate[.]"). The lien conveyed to Plaintiff (and the public) that the City was seeking to recoup its demolition costs, and should as a matter of simple logic alerted Plaintiff that the City—not some mystery adversary—was responsible for the demolition of his buildings. Plaintiff did not file suit until at

---

[4] Plaintiff has not alleged in the complaint what "information" he was seeking to obtain from the City, leaving open both possibilities.

least 13 months later,[5] which the Court finds to be not reasonably diligent under the circumstances. *See Rosado*, 832 F.3d 714 at 717 (concluding that seven-month delay in filing suit was not diligent for purposes of equitable tolling). In short, even assuming that the limitations period was equitably tolled for the time it conceivably might have taken for Plaintiff to identify who caused his injury, the allegations in the amended complaint are sufficient to establish that he did not file suit with reasonable diligence after he should have known the City was responsible. Consequently, equitable tolling does not apply to salvage his Section 1983 claim.

Plaintiff's remaining argument is that equitable estoppel prevents Defendant from asserting the statute of limitations because, in response to Plaintiff's requests for information regarding the demolition, the City allegedly withheld or fraudulently concealed information from him. (R. 21, Resp. at 12-13.) Unlike with equitable tolling, federal rather than state equitable estoppel doctrine applies.[6] *Shropshear*, 275 F.3d at 598. Under the federal doctrine, equitable estoppel applies "if the defendant takes active steps to prevent the plaintiff from suing in time," for example by promising not to plead the statute of limitations or destroying evidence. *Id.* at 595; *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). "Any deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline" can serve as the basis for an equitable estoppel defense to the statute of limitations. *Shropshear*, 275 F.3d at 597. However, "a plaintiff must show not only misconduct by the defendants, but

---

[5] Plaintiff does not specifically allege when in 2015 the demolition lien was imposed. However, even assuming to Plaintiff's benefit that the lien was imposed at the very end of 2015, at least 13 months elapsed before Plaintiff filed suit in February 2017.

[6] The reason for this difference, the Seventh Circuit has explained, is that equitable estoppel is based on "a general disapproval of inequitable conduct" while equitable tolling is intimately tied to "a judgment regarding the optimal length of a [statute of] limitations period." *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 598 (7th Cir. 2001).

also that he actually and reasonably relied on the misconduct." *Ashafa*, 146 F.3d at 463. Put differently, the alleged misconduct must actually "have been the cause of the plaintiff's not suing in time." *Flight Attendants Against UAL Offset v. Comm'r Internal Revenue*, 165 F.3d 572, 577 (7th Cir. 1999).

Equitable estoppel does not save Plaintiff's Section 1983 claim from the statute of limitations. In the absence of some kind of promise to provide the information that Plaintiff sought regarding the demolition—which Plaintiff does not allege—the City's alleged failure to be forthcoming is not the type of affirmative misconduct that gives rise to estoppel. *See id.* at 575-77 (concluding that equitable estoppel did not apply notwithstanding that defendant "fail[ed] to give [plaintiff] information that [plaintiff] claims it needed in order to sue," because defendant's mere unhelpfulness was "not the kind of obstructive conduct that would warrant estopping a defendant to plead the statute of limitations"); *Ashafa*, 146 F.3d at 462-63 (rejecting plaintiff's argument that equitable estoppel should apply "based on [defendant's] refusal to provide [plaintiff] with the names of the officers who allegedly violated his constitutional rights" because plaintiff "does not allege any instances in which [defendant] represented that it was going to disclose the names of the officers"). Not being forthcoming in providing information, which is all that Plaintiff alleges of the City, "is a lot different from actually preventing a plaintiff from suing in time." *Flight Attendants*, 165 F.3d at 577.

In addition, the alleged misconduct by the City fails on causation, another requirement of equitable estoppel. *Rosado*, 832 F.3d at 716-17; *Flight Attendants*, 165 F.3d at 577. Plaintiff has not explained—and it is not conceivable from the complaint's allegations—how the City's lack of cooperation in furnishing him information caused him to justifiably delay filing suit until after the statute of limitations had lapsed. *See Rosado*, 832 F.3d at 717 (declining to apply equitable

estoppel notwithstanding defendants' alleged withholding of evidence, because plaintiff had not shown how it prevented him from suing in time); *Flight Attendants*, 165 F.3d at 576-77 (declining to apply equitable estoppel because "notwithstanding [defendant's] foot dragging, [defendant's] conduct . . . did not make it impossible for [plaintiff] to sue in time"). Plaintiff does not allege, for example, that the City made promises to supply the information Plaintiff sought, but delayed in doing so until the statute of limitations had run. Nor does he allege that the City knowingly provided false information that lulled him into believing he had no claim until after the limitations period had lapsed. Plaintiff contends only in vague terms that the City's obstinance caused him to delay suing because what he sought from the City was information bearing on "vital elements for a [Section] 1983 claim." (R. 21, Resp. at 5-6.) However, Plaintiff alleges that the City still has not provided the information he sought, (R. 17, Compl. ¶ 46), which makes clear that the information was not necessary for him to file suit and therefore could not have been the cause of Plaintiff's delay. *See Flight Attendants*, 165 F.3d at 576 (questioning, in the estoppel context, how information could be "essential to [plaintiff] being able to file suit" when plaintiff "was able to file suit before it received" the information).

Based on the allegations of the complaint, neither equitable tolling nor equitable estoppel conceivably apply to Plaintiff's Section 1983 claim, which otherwise accrued on March 15, 2014. Because Plaintiff did not file suit until February 2017, almost three years later, this claim is barred by the applicable two-year statute of limitations. Because the claim is untimely, the Court declines to address Defendant's alternative argument that it is based on an impermissible *respondeat superior* theory of liability. (*See* R. 18, Mot. at 4.)

### B.     Supplemental Jurisdiction

Before addressing the timeliness of Plaintiff's state law claims, the Court must decide whether to continue exercising supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3)

("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction[.]"). When all federal claims in a case premised on federal-question jurisdiction are dismissed before trial, as will be the case here, the "usual practice in this circuit is for district courts to dismiss without prejudice state supplemental claims" and let the plaintiff pursue those claims in state court. *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (citation and internal quotation marks omitted). The Court has "broad discretion" over whether to retain or relinquish supplemental jurisdiction under these circumstances. *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017). While the norm is to relinquish jurisdiction, "[t]here are . . . unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point to federal decision of the state-law claims on the merits." *Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015) (citation omitted).

In keeping with this Circuit's usual practice, the Court declines to retain supplemental jurisdiction because the relevant factors do not justify doing so. Neither judicial economy nor convenience favors retaining jurisdiction, as the Court has not expended significant resources on Plaintiff's state law claims and their outcome is not pre-ordained by disposition of Plaintiff's Section 1983 claim as untimely. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (noting that "rarely when a case is dismissed on the pleadings can 'judicial economy' be a good reason to retain jurisdiction" and that "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter to the state court"). Comity favors letting Illinois courts decide Plaintiff's remaining claims, as they implicate only state law. *See RWJ Mgmt. Co. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (noting "legitimate and substantial concern with minimizing federal intrusion into

16

areas of purely state law" (citation omitted)). As to fairness, the U.S. Court of Appeals for the Seventh Circuit has noted that it may justify retaining jurisdiction in the "unusual case . . . when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *See Wright*, 29 F.3d at 1251. However, as this Court has implicitly recognized in the past, that concern only arises when a pendent claim "may have become time-barred *during the pendency*" of the federal suit. *CBS Outdoor, Inc. v. Vill. of Plainfield*, 959 F. Supp. 2d 1054, 1067 (N.D. Ill. 2013) (emphasis added). That is not the case here; Defendant's motion argues that the statute of limitations on Plaintiff's state law claims lapsed *before* Plaintiff filed suit.[7] Consequently, the circumstances here do not present an "unusual case" where supplemental jurisdiction should be retained. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 533 (7th Cir. 2011) ("Once the district court decline[s] to exercise supplemental jurisdiction over [state law] claims, the proper course [is] to dismiss them without prejudice.").

---

[7] Even if there was a possibility that the statute of limitations on some of Plaintiff's state law claims has expired during the pendency of this case—which is not suggested by the record—that would still not justify retaining supplemental jurisdiction, because Illinois law tolls the limitations period for the time the case has been pending in this Court plus one year. *See* 735 ILL. COMP. STAT. 5/13-217 ("[I]f . . . the action is dismissed by a United States District Court for lack of jurisdiction . . . then . . . the plaintiff . . . may commence a new action within one year or within the remaining period of limitation, whichever is greater, after . . . the action is dismissed by a United States District Court[.]"); *see also Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (affirming decision to relinquish supplemental jurisdiction based on Section 13-217); *Duckworth v. Franzen*, 780 F.2d 645, 656-57 (7th Cir. 1985) (noting that the possible expiration of the statute of limitations "is not a reason" to retain supplemental jurisdiction in Illinois federal courts because "[a]n Illinois statute provides that a case dismissed by a federal court on jurisdictional grounds . . . can be refiled within a year in state court, and in the interim the statute of limitations will stop running").

## CONCLUSION

For the foregoing reasons, this Court grants Defendant's motion to dismiss (R. 18). Plaintiff's Section 1983 claim is dismissed with prejudice as untimely. Plaintiff's course of dealings with Defendant is unfortunate, however, Plaintiff waited too long to bring his federal claims. Plaintiff's remaining claims arising under state law are dismissed without prejudice for want of jurisdiction. Plaintiff is free to pursue those claims in state court, although the Court offers no opinion about the timeliness of these claims or their underlying merit.

ENTERED: *[signature]*
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: February 12, 2018**